OVERTON, J.
 

 The suit first named in the title was instituted by the widow and heirs of W. S. Parkerson and by Stirling Parkerson, both as an heir of W. S. Parker-son and in his own right, to recover a balance of $13,500, with legal interest thereon from date of judgment until paid, for services rendered by W. -S. Parkerson and Stirling Parkerson as attorneys for the liquidators of the State National Bank of New Orleans, and to be paid by priority out of the funds of said bank on hand. The second suit named in the title is merely a proceeding in which the liquidators qualified as such in the civil district court.
 

 The employment of the Parkersons was brought about as follows: It appears that the president of the State National Bank became involved in difficulties, due to his mishandling the bank’s affairs, and. in December, 1907, left the country suddenly and without giving notice of his intended departure. As a result of the discovery of his flight and its cause, the officials of the bank were thrown into a state of confusion, and when the fact s of his departure became publicly known, It appeared as if a run on the bank and its complete collapse were imminent.
 

 W. S. Parkerson, an attorney at law, now deceased, was sent for, and requested to render such services as he could under the circumstances. He was attorney for- the bank at the time, and responded to the request at once. He was largely instrumental in making arrangements, unnecessary to deitail here, which prevented a run on the bank and its immediate co,llapse.
 

 The bank continued in business until January 30, 1908, on which date, by a vote of its stockholders, it went into voluntary liquidation under section 5220 of the Revised Statutes of the United States (U. S. Comp. St. § 9806). After the bank went into liquidation, Parkerson acted as attorney for the liquidators until his death, which occurred in 1915, approximately seven years after the liquidation began. Upon his death, his son, Stirling Parkerson, also an attorney at law, assumed the duties of his father, and acted as attorney for the liquidators until the virtual completion of the liquidation, which was in 1921.
 

 After the liquidation had been under way for several years, the liquidators requested W. S. Parkerson to state the sum he intended charging as a fee, and the amounts he had collected thereon.- Parkerson advised the liquidators that he wpuld expect a fee of $50,000 in full for all services rendered, and those to be rendered up to and including the close of the liquidation, and he furnished them a statement showing the amounts he had received on his fee, and showing.that there was a balance due thereon of approximately $24,000. At a meeting of the stock
 
 *939
 
 holders of the bank several of them expressed the opinion that' the fee was excessive. Some suggestion was made that Parkerson submit the matter to arbitration, but 'this he declined to do, and suggested that he be permitted to continue to serve as attorney for the liquidators, and if, at the close of his service, the fee should be deemed excessive, then that an appeal could be made to the courts to determine the matter. This suggestion, as later developments show, was adopted, and Parkerson agreed to ask for nothing more on account of his fee until the close of the liquidation.
 

 In 1921, when the liquidation was ready to be closed, Stirling Parkerson requested payment of the balance of the fee, which then amounted, according to his contentions, to approximately $24,000, but the liquidators refused to make payment, taking the position that the fee was excessive. However, after some negotiations a further payment was made, without prejudice to the rights of either side, which reduced the amount claimed to $13,500, the amount sued for herein.
 

 The services of W. S. Parkerson and of his' son, Stirling Parkerson, combined, extended over a period of 13 years. During this period one or the other of them frequently advised the liquidators and consulted with them relative to questions arising in the liquidation of the bank. During that period they prosecuted some 80 or 90 claims, aggregating approximately $990,000, and collected for the liquidators, in cash or its equivalent, approximately $450,000. .They also defended for the liquidators 10 or 12 suits in which there were involved approximately $250,000. With the exception of one, all suits prosecuted were fought to a successful conclusion, and all suits defended, without exception, were successfully defended.
 

 During the attorneyship of W. S. Parkerson and his son for the liquidators, the total assets liquidated and distributed exceeded $8,000,000. All the depositors, who presented their claims, or drew against their accounts, have been paid in full, and the stockholders .have been paid dividends, during the liquidation, exceeding 60 per cent, of the face value of their stock, the last dividend, amounting to $5 a share, having been declared in April, 1922.
 

 At the time of the trial of this suit there remained unpaid by the liquidators, not including the amount claimed herein and the expenses of this litigation, the following:
 

 Balance due depositors...................... $11,061 25
 

 Balance due banks and bankers............
 
 39 82
 

 Balance due stockholders on annual dividends accruing: prior to liquidation...... 1,462 16
 

 Balance due stockholders on six liquidating dividends............................... 4,180 45
 

 The foregoing aggregates................$16,744 68
 

 At the time of the trial there were $17,-379.61 on hand, which is more than enough to pay the balance due depositors and the unclaimed dividends to stockholders, but not enough to pay them and the balance claimed by plaintiffs.
 

 Of the amounts due depositors the largest is $2,600. This amount has been on deposit in the bank for over 30 ye'ars, and the depositor has not drawn against it during that time, and no one has laid claim to it. Out of the 860 depositors who still have money in the bank, 800 of them have deposits of less than $100 each, and 380 of these have deposits of less than 50 cents each. During the 15 years that elapsed between the time the bank went into liquidation and the trial of this suit no one has laid claim to these deposits.
 

 Of the unpaid dividends, the sum of $1,-463.16, stated as having been declared prior to liquidation, is due on stock, the owners of which cannot be found, and nothing has been heard from them or, their heirs for upwards of 20 or 30 years. The remaining dividends on hand, shown above as declared since liq
 
 *941
 
 uidation, have not heen claimed, though some of them have been on hand since 1912.
 

 The trial judge, after hearing the evidence, rendered judgment in favor of plaintiffs for the balance of the fee claimed, ¿with legal interest as prayed for, but' subordinated plaintiffs’ right to be paid out of the fund on hand to the payment of the depositors above mentioned, and also to the payment of the stockholders who have not claimed their dividends, though ordered the dividends de*clared in favor of said stockholders reduced to an amount sufficient to make up their pro rata of the amount necessary to pay the balance of said fee, and reserved to plaintiffs the right to demand a like refund from the stockholders who have been paid the liquidation dividends declared in their favor.
 

 Plaintiffs alone have appealed from the judgment rendered. The liquidators for the bank have not appealed, nor have they filed an answer to the appeal, praying for any amendment whatever of the judgment appealed from. Therefore-the judgment rendered below is final in so far as it is against the liquidators; and, as plaintiffs recovered judgment in the trial court for the entire balance claimed by them, the only question presented to us for decision is as to whether plaintiffs are entitled to payment of the balance of the fee by priority.
 

 Plaintiffs allege, among other things, that they are entitled to payment by priority by virtue of a paramount lien and privilege for the balance of the fee claimed on all the property and funds in the hands of the liquidators. The basis for this contention is that the balance of said fee forms part of the expenses of the liquidation, and that the law grants a lien for such expenses.
 

 The bank in question is a national bank, and its liquidation and the distribution of its funds are governed by federal law. Easton v. Iowa, 188 U. S. 220, 23 S. Ct. 288, 47 L. Ed. 452; First Nat. Bank v. Salden, 120 F. 212, 56 C. C. A. 532, 62 L. R. A. 559. Acting upon that principle, plaintiffs ■ cite,' in support of their contention that they have a lien; section 5230 of the' Revised'Statutes of the United States (U. S. Comp. St. § 9817) which, in so far as it is necessary to quote, reads as follows:
 

 “For any deficiency in the proceeds of all the bonds of an association [referring to national banks], when thus sold, to reimburse to the United States the amount expended in paying the circulating notes of the association, the United States shall have a paramount lien upon all its assets; and, such deficiency shall be made good out of such assets in preference to any and all other claims whatsoever,
 
 except the necessary costs and expenses of administering the same."
 
 (Italics ours.)
 

 The contention of plaintiffs is that the foregoing section grants a lien on the assets of a national bank for the necessary expenses of administering those assets in liquidating the affairs of the bank, and that the fees of the attorneys for the liquidators are one oi those expenses. The liquidators'contend that the section has no reference, in so far as the recognition of a lien is concerned, to necessary expenses incurred in administering the assets- of a bank in liquidation, but has reference only to necessary expenses of administration, incurred when the assets of a bank are administered by a receiver.
 

 In our view the section of the Revised Statutes cited recognizes the existence of a lien on the assets of a national bank for the necessary expenses of administering the' assets thereof whether -the assets are administered through a -receiver or by an agent or liquidator appointed to administer 'them. The section .cited was taken from the Act of June 3, 1864, c. 106, 13 Stat. L. 114, §§ 47, 48, dealing with both the voluntary liquidation of national banks and with receiver-ships for such hanks; and, in the Revised Statutes, the chapter of which it forms part
 
 *943
 
 (chapter 4 of title 62), is entitled, “Dissolution and Receivership.” In the absence of some strong reason to the contrary it is our opinion that it should not be held that the lien, recognized by the section, is confined to receiverships. We find no sufficient reason to hold that it is so confined. In our view it attaches also in the liquidation of a national bank. It is also our view that the attorneys’ fees incurred herein were necessary expenses arising in the administration of the assets of the bank.
 

 The liquidators also contend that under no circumstances are plaintiffs entitled to payment over other creditors for the reason that W. S. Parkerson was a stockholder in the bank; and we assume, as Stirling Parkerson is an heir of W. S. Parkerson, that he, during the time he served as attorney for the liquidators, which was after the death of W. S. Parkerson, was also a stockholder in said bank. The liquidators rely, in support of this contention, on section 3 of the Act of June 30, 1876, as amended by the Act of March 2, 1897 (Fed. Stat. Anno. [1st Ed.] vol. 5. p. 184 et seq. [U. S. Comp. St. § 9827]), which reads, in so far as it is necessary to quote it, as follows:
 

 “That whenever any association shall have been or shall be placed in the hands of a receiv- 'or, as provided in section fifty-two hundred and thirty-four and other sections of the Revised Statutes of the United States, and when, as provided in section fifty-two hundred and thirty-six thereof, the Comptroller of the Currency
 
 shall have paid
 
 to each and every creditor of such association,
 
 not including shareholdei-s who are creditors of such association,
 
 whose claim or claims as such creditor shall have -been proved or allowed as therein prescribed, the full amount of such claims,
 
 and all expenses of the receivership *
 
 * * the Comptroller of the Currency shall call a meeting of the shareholders of such association * * *. At such meeting the shareholders shall determine whether the receiver shall be- continued and shall wind up the affairs of such association, or whether an agent shall be elected for that purpose. * * * ” (Italics ours.)
 

 The foregoing section, it is obvious, applies only to receiverships, but it is urged, in effect, that, if a creditor of a national bank, who is a stockholder therein, shall not be paid in a receivership until all other creditors are paid, then it follows with even greater, force that a creditor of a bank in liquidation should not bo paid until all the remaining creditors are paid. We deem it sufficient, however, to say that the provision in the section relative to the payment of creditors who are stockholders has no-application to the payment of the expenses incurred in administering the assets of the bank, for the section, in almost so many words, provides that such expenses shall be paid, and this we take it from the context, whether the indebtedness, representing the expenses of administration, is due to stockholders or not. In our opinion, as we have said, attorneys’ fees are part of the expenses of administration. Hence, our conclusion is that this position is- not well taken.
 

 The liquidators have filed a' plea of estoppel. This plea, as we appreciate it, is based on the hypothesis that plaintiffs, are stockholders, and as such' have accepted liquidation dividends, and especially the last dividend of $5 a share, and, having done so, 'that they - are in no position tó claim priority of payment out of funds retained for the ■- purpose of paying depositors who have not withdrawn the amounts deposited by them, and of paying stockholders who have not. claimed their dividends. '
 

 Until the last liquidation dividend of $5 a share was declared there were ample funds on hand to pay those stockholders, who have never claimed their dividends, and those of the depositors who had not withdrawn the amounts deposited by them as well as the small balance, stated above, due banks and bankers, and the balance of the fee claimed herein. It was the declaration of this last
 
 *945
 
 dividend that brought about the present sit uation. The declaration of the others had no such effect.
 

 Plaintiffs accepted the last dividend. Before doing so, however, Stirling Parkerson, for himself and in their behalf, inquired of one of the liquidators to ascertain whether there was sufficient to pay the remaining liabilities of the bank, including the balance claimed by plaintiffs on the fee which is the subject of this c'ontest. Parkerson was informed that there was. Plaintiffs therefore accepted the dividend under an erroneous belief as to the facts. Later they tendered the dividend, amounting to $15, to the liquidators, and deposited it in the registry of the court, but the liquidators refused to accept it. Under the circumstances we are not of the opinion that plaintiffs are estopped.
 

 For the foregoing reasons, our conclusion is that the balance of the fee claimed by plaintiff is secured by lien on the assets of the bank; and, as the fee is a part of the expense "of administering the assets of the bank in liquidation, plaintiffs are entitled to payment over other creditors. If any of the depositors or stockholders who have not withdrawn their deposits or dividends ever present their claims, which after so long a time is doubtful, and it is held that the bank is still liable thereon, the stockholders may have to return sufficient of the liquidating dividends, which they have received, to make the deficiency, if any, good.
 

 For the reasons assigned, it is ordered, adjudged, and decreed that the judgment appealed from be amended by recognizing and ordering enforced the lien claimed by plaintiff on the assets of said bank, and by ordering plaintiffs paid the balance of said fee over all other creditors, except the remaining expenses of the liquidation, and as thus amended that said judgment be affirmed, appellees to pay the costs of appeal.