GEORGE O. DOVEY v. STATE OF NEBRASKA.

FILED MARCH 7, 1928. No. 25975.

*Jesse L. Root, William R. Patrick* and *A. L. Tidd,* for plaintiff in error.

*O. S. Spillman, Attorney General,* and *Harry Silverman, contra.*

Heard before GOSS, C. J., ROSE, GOOD, THOMPSON, EBERLY and HOWELL, JJ., and REDICK, District Judge.

THOMPSON, J.

Plaintiff in error, hereinafter called defendant, was informed against in the Cass county district court for unlawfully receiving on deposit in the First National Bank of Plattsmouth, of which he was at the time an officer, public money, collected and held by the county treasurer of such county without first having complied with the provisions of article XXIII, ch. 61, Comp. St. 1922, entitled "Deposit and Investment of Public Funds," as amended by chapter 96, Laws 1925, by furnishing bond or other security for such deposit. At the trial he was found guilty and sentenced to pay a fine of $300; to reverse which judgment, error is prosecuted.

Such article XXIII, as amended, so far as material to this case, in substance provides, that the county treasurers of the respective counties of this state shall deposit for safe-keeping in state, national or private banks doing business in their respective counties, the amount of money coming into their hands as such county treasurers, but shall not make such deposits before the board of county commissioners has selected and approved the depository

bank on its application, determined the kind of bond or security by it to be given, and such bond or security has been furnished and by the board approved; that the treasurer shall not have on deposit in the bank at any time more than the maximum amount of such bond, where the one given is a guaranty bond; that "any treasurer, or any officer of a bank, who shall directly or indirectly violate or knowingly permit to be violated the provisions of the within section, so far as it relates to the deposit of public money in a bank, shall be guilty of felony, and, upon conviction thereof, shall be fined in any sum not less than one hundred dollars ($100) nor more than one thousand dollars ($1,000) or shall be imprisoned in the penitentiary for not less than one year and not more than three years." State banks in which deposits are protected by the depositors' guaranty fund are not required by such article to give bond or other security.

The facts, as reflected by the record, and which must have been found by the jury, are in substance as follows: Mia U. Gering was county treasurer of Cass county, and had collected and held in her possession as such, at the dates here in question, public funds amounting to $25,000 and over. The First National Bank of Plattsmouth in such county was a banking corporation duly organized for the purpose, and doing business at the place and under the laws indicated by its name. The defendant was at the time, and had been for some years, an officer of such bank, to wit, its cashier. The bank had been by the county board, on such bank's application, made a depository of public funds on its giving a guaranty (surety) bond in the sum of $20,000, conditioned as by statute provided, which bond was by the bank procured to be executed, filed with the county clerk, and approved by the county board on and prior to February 7, 1923. From this date, under the above conditions, the county treasurer had deposited in such bank public funds in different amounts, but at no one time had such deposit exceeded the bond until the challenged deposit was had and made. On or about November 15, 1926, defendant went to the office of the county treas-

urer and inquired as to the deposit in question, and the treasurer informed him that the taxes covered by his inquiry had not as yet been paid, and that when paid they would exceed the bond of $20,000, and she could not turn over to him for deposit in the aforesaid bank the funds by him requested, until the bank had procured, filed and had approved an additional bond covering the solicited deposit. Thereafter several conversations took place between defendant and the treasurer relative to the deposit in question, and on the morning of December 2, 1926, defendant again returned to the treasurer's office and inquired if the collection of taxes had been made, and was informed that they had. He then asked the treasurer to deposit the amount thereof, to wit, $25,712.34 in such bank, and was again informed by the treasurer that she could not comply with his request unless and until the above mentioned additional bond was given and approved. In response defendant told the treasurer that the additional bond had been procured and was then in the bank, and that he would have delivered it to her that morning, had he known he would call at her office; that it was ready for her, and she could have it when she came to the bank to make the deposit. Relying on this statement, and on the afternoon of the same day, to wit, December 2, 1926, at a time when there was on deposit in the bank public funds in the sum of $17,040.61 which had previously been deposited in accordance with the $20,000 surety bond heretofore referred to, the county treasurer deposited in the bank the $25,712.34, and at the same time had an item of 6 cents corrected, which made a total then on deposit in such bank of public funds of $42,753.01. After the deposit was made, the defendant told the treasurer that there was a little matter to finish on the bond, that he would attend to it, and deliver the bond to her that same afternoon. However, such bond had not been procured, and neither was it thereafter procured and filed by the bank, the defendant, or any other person. Thus, of such total deposit the sum of $22,753.01 was not secured by bond

or otherwise, all of which was well known to the defendant. Further, such bank, owing to its insolvency, was taken charge of by the comptroller of the currency on or before the 26th day of December, 1926, and a receiver thereof appointed.

To the judgment entered the defendant assigns seven claimed reasons why it should be reversed. These seven, however, may be resolved into two: (1) Does the article taken as a whole define a crime against an officer of a national bank, admitting that it is within legislative limitations? (2) Is the enactment such an interference with the vested rights, duties and privileges of an officer of a national bank, or of such bank, as to render it unenforceable?

As to the first assignment, a consideration of the enactment as a whole leads us to conclude that a felony as to an officer of a national bank is therein defined; and, further, that the information filed in this case is sufficient to charge the defendant with the commission of a felony as in such article prescribed.

As to the second assignment, it may be admitted that "National banks are brought into existence under federal legislation, are instrumentalities of the federal government and are necessarily subject to the paramount authority of the United States. Nevertheless, national banks are subject to the laws of a state in respect of their affairs unless such laws interfere with the purposes of their creation, tend to impair or destroy their efficiency as federal agencies or conflict with the paramount law of the United States." *First Nat. Bank v. Missouri*, 263 U. S. 640, 656. The article here under consideration, as we view it, was enacted for the purpose of safeguarding the public funds as they accumulate in the office of the county treasurer; a police regulation enacted in furtherance of the public good. By these enactments, as to the funds mentioned, the powers and duties of the county treasurer are defined and limited, so that he as well as the bank officer dealing with him are each informed of the scope of such treasurer's author-

ity. This was at all times fully realized by the defendant, as evidenced by the hereinbefore detailed facts. The state was not, by this article, attempting to, and neither did it, interfere with the due operation of national banks in their quest for deposits, but was denying to them the possession of public funds in the custody of county treasurers, unless and until they had complied with the statutes by procuring to be executed, filed and approved, guaranty bonds. The state was clearly within its rights when it exacted this reasonable protection. *Coffey v. Harlan County*, 204 U. S. 659. It speaks to its citizens and public officers by and through its laws and enforces its demands in the same manner. An individual could have demanded of the bank that it secure him in any way by him proposed before he would permit such bank to become possessed of his money; why not the state? Such an enactment was not a denial of deposits to the bank; it was simply fixing the conditions precedent to its reception thereof, and providing a penalty both as to the county treasurer and the bank officer, who breached such statutory provisions. This enactment was not a discrimination against the banks; they were the only ones who could by any means obtain such temporary custody of the public funds; to every other it was denied. Neither were the national banks discriminated against by the exception of "state banks in which deposits are protected by the depositors' guaranty fund." While the national banks were thus required to give a surety bond, as in this case, the state banks by and through the guaranty of deposits law were required to furnish security more onerous and drastic. Thus, instead of national banks being legislated against by the statutes under consideration, if comparative consideration can be held to be in any way material, and if these statutes are open to the challenge of class legislation (which we find they are not), such national banks were the favored. An officer of a national bank is not, by reason thereof, rendered immune from the criminal laws of the state. We are impelled to conclude that the article under consideration does not contravene the

laws of the federal government which provide for the creation and operation of national banks, nor is it an encroachment thereon, either as expressed in such laws or as may be reasonably implied therefrom. These conclusions are in harmony with the constructions given the national banking act by our federal supreme court in *Waite v. Dowley*, 94 U. S. 527; *McClellan v. Chipman*, 164 U. S. 347; *Guthrie v. Harkness*, 199 U. S. 148; *First Nat. Bank v. Missouri*, 263 U. S. 640.

*National Bank v. Ferguson*, 48 Kan. 732, and *State v. First Nat. Bank of Clark*, 2 S. Dak. 568, while in no manner controlling on the federal courts, have also aided us in arriving at our conclusion herein.

Counsel for defendant relies mainly on *Easton v. Iowa*, 188 U. S. 220. However, it seems to us that such case is easily distinguishable from the case at bar. There, the state of Iowa had enacted a statute which made it a felony for an officer of a bank (state or national) to receive deposits when the bank was insolvent. In construing this statute the supreme court of Iowa had determined that it applied to national as well as state banks, and that the penal provisions of such statute were applicable to the former as well as the latter. Error was prosecuted to the Supreme Court of the United States, where, in the course of its opinion, it is stated, at page 238:

"Our conclusions, upon principle and authority, are that congress having power to create a system of national banks, is the judge as to the extent of the powers which should be conferred upon such banks, and has the sole power to regulate and control the exercise of their operations; that congress has directly dealt with the subject of insolvency of such banks by giving control to the secretary of the treasury and the comptroller of the currency, who are authorized to suspend the operations of the banks and appoint receivers thereof when they become insolvent, or when they fail to make good any impairment of capital; that full and adequate provisions have been made for the protection of creditors of such institutions by requiring

frequent reports to be made of their condition and by the power of visitation by federal officers; that it is not competent for state legislatures to interfere, whether with hostile or friendly intentions, with national banks or their officers in the exercise of the powers bestowed upon them by the general government."

Thus, it will be seen that in the *Easton* case congress had legislated on the subject, and to permit an investigation by a state as to the insolvency of a national bank, whenever such state might deem it wise, would be a direct interference with the operation of such bank, as well as with the duties and privileges imposed upon the secretary of the treasury and the comptroller of the currency, as by statute provided. A different situation is presented when we consider the instant case. As to these public funds of the state, congress had neither legislated in reference thereto, or attempted to do so, and neither could it by force of legislation create a rule governing the disposition of the public moneys of the state. As we view it, the Iowa statute sought to be enforced in the *Easton* case was not an incidental restriction placed upon the business of the national bank, but rather an attempted interference with the due operation of such bank. In these federal banking laws congress was acting in derogation of the rights of the states only to the extent expressed in its enactments, or as to those things that might be fairly implied therefrom.

While the reasoning in the *Easton* case is forceful and instructive, as we construe it, it is without application to the article here under consideration which in no manner interferes with, or impedes, the due operation of national banks.

It follows that the judgment of the trial court is right, and it is,

AFFIRMED.

GOOD, J., dissents.