PEOPLE *v.* WILKIN & WALSH.

1. CRIMINAL LAW—JURISDICTION—UNITED STATES.

Since an act or series of acts may constitute an offense against the laws of an individual State as well as against the laws of the United States, provision of Federal statute vesting exclusive jurisdiction in Federal courts in cases thereafter mentioned, including crimes and offenses cognizable under the authority of the United States, such statute is construed as requiring that Federal law be enforced only by Federal courts (28 USCA, § 371).

2. SAME—STATE STATUTE—JURISDICTION—FEDERAL RESERVE BANK SYSTEM.

The State court has jurisdiction to try defendants charged with offenses against the State banking act notwithstanding State bank involved may have been a member of the Federal reserve system, where offense is a violation of a State statute.

3. SAME—PRELIMINARY EXAMINATION—EVIDENCE.

　　Evidence on a preliminary examination need not be sufficient to establish defendant's guilt beyond a reasonable doubt.

4. SAME—PRELIMINARY EXAMINATION—BINDING OVER FOR TRIAL.

　　Good reason to believe defendants guilty of crime charged justifies an examining magistrate in binding them over for trial.

5. SAME—CONSPIRACY TO DEFRAUD—BANKS AND BANKING—EVIDENCE.

　　Evidence presented to examining magistrate as to defendants charged with conspiring to defraud State of Michigan in the exercise of its fiscal functions by falsifying reports to State banking commissioner *held*, sufficient to justify binding them over for trial (3 Comp. Laws 1929, § 11932).

6. APPEAL AND ERROR—QUESTIONS REVIEWABLE—STATEMENT OF QUESTIONS INVOLVED.

　　Question of whether or not title to act under which defendants are prosecuted is defective, is not discussed, where defendants' statement of questions involved states they are not concerned with the question.

Appeal from Genesee; Gadola (Paul V.), J. Submitted June 9, 1936. (Calendar No. 38,522.) Decided September 2, 1936.

Information filed charging Herbert R. Wilkin and James L. Walsh with violation of the State banking law. From order quashing information, the people appeal. Reversed and remanded for trial.

*David H. Crowley,* Attorney General, *Andrew J. Transue,* Prosecuting Attorney, and *Phillip Elliott,* Assistant Prosecuting Attorney, for the people.

*Edward N. Barnard,* for defendant Wilkin.

BUTZEL, J. An information was filed charging Herbert R. Wilkin and James L. Walsh with conspiring "to defraud the State of Michigan in the

exercise of its * * * fiscal functions by deliberately giving false information to the commissioner of the banking department * * * regarding the financial condition of the Union Industrial Trust & Savings Bank (of Flint), and to deceive the commissioner * * * the depositors and creditors of the * * * bank, its directors and stockholders * * * and the public as to the financial condition of the * * * bank, and to deceive said persons as to the amount for which said bank was indebted for money borrowed and bills payable and the amount of its deposits, and did feloniously conspire to * * * issue certain certificates of deposit of the * * * bank, for the purpose of borrowing money for said bank and to make false and deceptive entries on the books of the Union Industrial Trust & Savings Bank as to the assets, liabilities and resources of the * * * bank.''

The Union Industrial Trust & Savings Bank of Flint is a State bank and also a member of the Federal reserve system. Defendant James L. Walsh was vice-president and chairman of the operating committee of the Guardian Detroit Union Group, Inc., a holding company owning most of the stock in a group of banks, including the Flint bank, the Guardian Detroit Bank of Detroit and the Highland Park State Bank of Highland Park. He was vice-president and director of the Guardian Detroit Bank and also a director of both the Flint and Highland Park banks. Defendant Herbert R. Wilkin was a member of the group operating committee and executive vice-president and director of the Flint bank.

On December 30, 1930, the Flint bank owed the Guardian Detroit bank $1,800,000 for bills payable. The defendants knew or must have known that within the next few days the bank statement would be asked, published and advertised. The corre-

spondence and communications between the two showed that it was their purpose to succeed in showing no bills payable owing on the annual statement of the Flint bank. The defendants, in their official capacities, accomplished this by substituting certificates of deposit in lieu of the bills payable. In order to take up the $1,800,000 of bills payable on December 31, 1930, a certificate of deposit was issued in the sum of $1,200,000 payable to the Guardian Detroit bank. A deposit slip was prepared which on its face showed that the Flint bank had deposited in the Detroit bank the sum of $1,200,000. The Highland Park bank deposited $600,000 in the Guardian Detroit bank for the credit of the Flint bank which, in turn, issued a certificate of deposit payable to the Highland Park bank in the same sum. The $1,800,000 of deposits of the Flint bank in the Detroit bank and the bills payable in the same sum were cancelled, leaving certificates of deposits in the sum of $1,800,000 as a net result of the transaction. These transactions were entered into so that, in the language of defendant Walsh, "none of the units of the Guardian Detroit Union Group will show $1 of bills payable in their annual statement to be published shortly." The $600,000 certificate of deposit held by the Highland Park bank issued on December 31, 1930, in accordance with the telephone conversation between the defendants was evidently only deposited for the date on which the bank statement would be made out, for on January 2, 1931, two days after the issuance of the certificate of deposit, the Highland Park bank was paid out of funds secured by notes which were dated December 31, 1930, and received by the Detroit bank on that date, but not entered on its books until

January 2, 1931. A $200,000 part payment was made on the $1,200,000 certificate of deposit on January 2d, and tends to show that the certificate of deposit was recognized by the various banks not as a deposit but as borrowed money. The balance of $1,000,000 of the certificate of deposit remained on the books of the bank until February 10, 1931. Correspondence between the parties indicates that this transaction was conducted solely for the purpose of what defendants euphemistically called "window dressing" and the prosecution terms a fraud on the banking commissioner, depositors and public. Printed statements were duly published. The banks were congratulated on the remarkable showing they had made in paying off their bills payable and their financial strength.

On December 31, 1931, a Mr. Strassler, the auditor of the Flint bank, was told by Mr. Wilkin that the Detroit bank was reducing the notes of the Flint bank payable to the Detroit bank by $600,000 and that the Flint bank should issue a certificate of deposit for a like amount. On January 2, 1932, Wilkin and Strassler learned that the deposits for $600,000 had not been entered on the books of the Detroit bank nor had the Flint bank been credited with a payment of $600,000 on its bills payable. On January 8, 1932, the annual bank statement was issued in which this decrease in bills payable of $600,000 and increase of deposits in like amount was included although the books of the Detroit bank did not show this change. The prosecution claimed that these transactions were the result of a criminal conspiracy to make false entries and reports and issue certificates of deposit for the purpose of borrowing money. Defendants were bound over by the examining magistrate to trial in the circuit court. In the

circuit court defendants moved to quash the information on the ground that the State courts had no jurisdiction inasmuch as the Flint bank was a member of the Federal reserve bank and that offenses against a member of the Federal reserve bank were cognizable only by the Federal courts to the exclusion of the State; another ground for the motion was that the testimony taken in the preliminary examination was not sufficient to justify the examining magistrate in binding defendants over for trial.

It is provided in 12 USCA, § 592, that it shall be a Federal offense for any officer of a Federal reserve bank or member thereof to make false entries or reports. The prosecution makes the argument that the particular offense of issuing certificates of deposit for the purpose of borrowing money, specifically prohibited by our State laws, 3 Comp. Laws 1929, § 11932, is not covered by the Federal statutes and is cognizable by the State courts. We prefer to discuss the larger question as to whether when a State bank is a member of the Federal reserve bank, one who commits an offense against the bank can be tried and punished by the State notwithstanding that the same offense may also be punishable by the Federal government. Defendants quote 28 USCA, § 371, which provides as follows:

"The jurisdiction vested in the courts of the United States in the cases and proceedings hereinafter mentioned, shall be exclusive of the courts of the several States. First, of all crimes and offenses cognizable under the authority of the United States."

Defendants conclude, that, as the offenses in the instant case are cognizable under the authority of the United States, therefore, jurisdiction to try

these offenses is vested exclusively in the courts of the United States. We believe that it is clear that section 371 was not intended to mean that all acts which constitute offenses against Federal laws can be punished only by Federal agencies, but only that Federal law was to be enforced only by Federal courts. An act or series of acts may constitute an offense against the laws of an individual State as well as against the laws of the Federal government. *Herbert* v. *Louisiana,* 272 U. S. 312 (47 Sup. Ct. 103, 48 A. L. R. 1102); *Pettibone* v. *United States,* 148 U. S. 197 (13 Sup. Ct. 542, 547).

Defendants call our attention to cases where it was held that officers of national banks could not be prosecuted in the State courts where the offenses were covered by Federal law. *People* v. *Fonda,* 62 Mich. 401; *Easton* v. *Iowa,* 188 U. S. 220 (23 Sup. Ct. 288). Defendants claim that the same reasoning deprives the State of the right to prosecute for offenses against the State bank which has become a member of the Federal reserve system. The analogy fails. As the cases involving offenses against national banks hold, congress, having established a system of national banks and having provided complete legislative enactment covering every phase of their existence, has assumed complete and exclusive jurisdiction of their activities. Consequently, any attempts by the State to take jurisdiction of them in matters which are covered by Federal legislation is void. State member banks of the Federal reserve system are in an altogether different category. In *Westfall* v. *United States,* 274 U. S. 256 (47 Sup. Ct. 629), where a bank official of a State bank, member of the Federal reserve bank, was convicted in a Federal court of misapplying funds of the bank, the court stated:

"It is not disputed that Rev. Stat. § 5209 (12 USCA, § 592) if applicable, punishes the bank manager, and those who aided and abetted him in his crime. *Coffin* v. *United States,* 156 U. S. 432, 447 (15 Sup. Ct. 394). The argument is that Congress has no power to punish offenses against the property rights of State banks. It is said that the statute is so broad that it covers such offenses when they could not result in any loss to the Federal reserve banks, and it is suggested that if upheld the act will invalidate similar statutes of the States. This argument is well answered by *Hiatt* v. *United States* (C. C. A.), 4 Fed. (2d) 374, 377. Certiorari denied, 268 U. S. 704 (45 Sup. Ct. 638). Of course an act may be criminal under the laws of both jurisdictions * * * and if a State bank chooses to come into the system created by the United States, the United States may punish acts injurious to the system, *although done to a corporation that the State also is entitled to protect.* The general proposition is too plain to need more than statement. That there is such a system and that the reserve banks are interested in the solvency and financial condition of the members also is too obvious to require a repetition of the careful analysis presented by the solicitor general. The only suggestion that may deserve a word is that the statute applies indifferently whether there is a loss to the reserve banks or not. But every fraud like the one before us weakens the member bank and therefore weakens the system. Moreover, when it is necessary in order to prevent an evil to make the law embrace more than the precise thing to be prevented it may do so. It may punish the forgery and utterance of spurious interstate bills of lading in order to protect the genuine commerce. *United States* v. *Ferger,* 250 U. S. 199 (39 Sup. Ct. 445). See, further, *Southern R. Co.* v. *United States,* 222 U. S. 20, 26 (32 Sup. Ct. 2). That principle is settled. Finally, Congress may employ

State corporations with their consent as instrumentalities of the United States, * * * and may make frauds that impair their efficiency crimes.''

See, *Hiatt* v. *United States* (C. C. A.), 4 Fed. (2d) 374.

The State court has jurisdiction to try these defendants for offenses against the State banking act. The trial court in quashing the information did not pass upon the question of whether there was probable cause for believing that the defendants were guilty as charged and binding them over for trial. Defendants now raise this question. The evidence on a preliminary examination need not be sufficient to establish defendants' guilt beyond a reasonable doubt. *People* v. *Hirschfield,* 271 Mich. 20. Where there is good reason to believe that defendants are guilty of the crime charged, the examining magistrate is justified in binding them over for trial. *People* v. *Dellabonda,* 265 Mich. 486. While we cannot detail all of the facts, we believe from what we have already stated and many other surrounding circumstances, there was a sufficient showing to justify binding defendants over for trial.

The question of whether the title to the act under which the defendants were prosecuted was defective or not need not be discussed as defendants in their statement of questions involved state that they are not concerned with the question.

The case is remanded to the lower court for trial.

North, C. J., and Fead, Wiest, Bushnell, Edward M. Sharpe, and Toy, JJ., concurred. Potter, J., did not sit.