*In re* KELLY.

1. CRIMINAL LAW—STATES—UNITED STATES—JURISDICTION.
   Acts may constitute an offense against the laws of an individual State as well as against the laws of the United States, hence a State court may have jurisdiction.

2. SAME—BREAKING AND ENTERING—UNITED STATES—CESSION OF JURISDICTION.
   A State court has jurisdiction to try one accused of breaking and entering a building on land acquired by the Federal Public Housing Authority and used by it as a rental office, operating under the supervision and within the jurisdiction of

---

* See Act No. 255, chap. 3, § 1 *et seq.,* Pub. Acts 1937 (Comp. Laws Supp. 1940, § 17543–41 *et seq.,* Stat. Ann. 1944 Cum. Supp. § 28.2101 *et seq.*).—REPORTER.

another arm of the executive branch of the government, notwithstanding cession of jurisdiction by statute to the United States over certain lands (40 USCA, §§ 257, [a]–258 [e]; 42 USCA, § 1521 *et seq.;* Act No. 3, Pub. Acts 1942 [1st Ex. Sess.]).

Appeal from Jackson; Simpson (John), J. Submitted April 4, 1945. (Docket No. 30, Calendar No. 42,939.) Decided June 4, 1945.

Habeas corpus by James Wayland Kelly and ancillary certiorari to obtain his release from State Prison of Southern Michigan. Petition denied. Plaintiff appeals. Affirmed.

*Phillip C. Kelly,* for plaintiff.

*John R. Dethmers,* Attorney General, *Edmund E. Shepherd,* Solicitor General, *Daniel J. O'Hara* and *Perry A. Maynard,* Assistants Attorney General, and *Francis W. Kamman,* Prosecuting Attorney of Washtenaw County, for defendants.

BUSHNELL, J. This is a review of the denial, by the circuit court for the county of Jackson, of the petition of James Wayland Kelly for a writ of habeas corpus and ancillary writ of certiorari. Kelly, when arraigned on December 21, 1943, in the circuit court of Washtenaw county pleaded guilty to an information charging him with breaking and entering in the nighttime on October 4, 1943, with intent to commit larceny. He was sentenced and is now confined in the southern Michigan State prison at Jackson.

The building which he entered was the rental office of the Federal Public Housing Authority at Willow Court in Ypsilanti township, Washtenaw county. It is located on lands which were taken on

December 11, 1942, by the United States of America, under the authority "of the act' of August 1, 1888, 25 Stat. at L. 357 (40 USCA, § 257); the act of February 26, 1931, 46 Stat. at L. 1421 (40 USCA, §§ 258 [a] to 258 [e]); the act of October 14, 1940 (Public No. 849, 76th Congress), as amended,* and Executive Order No. 9070, dated February 24, 1942, funds having been appropriated by the act of October 14, 1940 (Public Resolution 106, 76th Congress) and acts supplementary thereto and amendatory thereof." These lands are being used for housing pursuant to the act of 1940, as amended.

It is petitioner's contention that exclusive jurisdiction over these lands had been ceded to the United' States by the State of Michigan prior to the time of the commission of the offense. and, therefore, the State court was without jurisdiction with respect to crimes committed on the lands thus ceded.

The statute upon which petitioner relies is Act No. 3, Pub. Acts 1942 (1st Ex. Sess.) (Comp. Laws Supp. 1943, § 416–31 et seq., Stat. Ann. 1944 Cum. Supp. § 4.113 [1] et seq.), entitled:

"An act to cede jurisdiction to the United States over certain lands and for the purchase and condemnation thereof; and to repeal all acts and parts of acts inconsistent with this act.    *    *    *

"SECTION 1. The consent of the State of Michigan is hereby given in accordance with seventeenth [17th] clause, eighth [8th] section, of the first [1st] article of the Constitution of the United States, to the acquisition by the United States, by purchase, condemnation or otherwise, of any land in this State which has been, or may hereafter be acquired for forts, magazines, arsenals, dockyards and other needful buildings.

* See 42 USCA, § 1521 et seq.—REPORTER.

"Sec. 2. Exclusive jurisdiction in and over any land so acquired by the United States shall be, and the same is hereby ceded to the United States for all purposes, except that the State retains the right to serve thereon all civil and criminal process issuing under authority of the State, but the jurisdiction so ceded shall continue no longer than the United States shall own such land.

"Sec. 3. The jurisdiction hereby ceded shall not vest until the United States shall have acquired the title to the said lands by purchase, condemnation or otherwise; and so long as the said lands shall remain the property of the United States when acquired as aforesaid, and no longer, the same shall be and continue exempt and exonerated from all State, county and municipal taxation, assessment or other charges which may be levied or imposed under the authority of this State.

"Sec. 4. All acts or parts of acts inconsistent with the provisions of this act are hereby repealed."

This act was given immediate effect on January 28, 1942.

The act of congress under which the United States acquired the land on which the building in question is located is known as the Lanham act (42 USCA, § 1521 *et seq.*). Section 10 (42 USCA, § 1547) of that act provides:

"Notwithstanding any other provision of law, the acquisition by the administrator of any real property pursuant to this act shall not deprive any State or political subdivision thereof of its civil and criminal jurisdiction in and over such property, or impair the civil rights under the State or local law of the inhabitants on such property. As used in this section the term 'State' shall include the District of Columbia."

A similar problem was presented in *People* v. *Burke,* 161 Mich. 397, where defendants sought review after a conviction of breaking and entering a building in which a postoffice was located. The principal question presented in that case was whether the Federal courts "have exclusive jurisdiction to try and punish the defendants." Section 5478 of the Revised Statutes of the United States (17 Stat. at L. 321, U. S. Comp. Stat. 1901, p. 3696)*, provided for punishment of persons forcibly breaking into any postoffice or any building used in whole or in part as a postoffice, with intent to commit therein larceny or other depredation; and section 5328 ** of the same revision and the same title provided, as does the Lanham act, that:

" 'Nothing in this title (Crimes) shall be held to take away or impair the jurisdiction of the courts of the several States under the laws thereof.' "

In *Re Van Dyke,* 276 Mich. 32,† another postoffice case, a writ of habeas corpus was denied Van Dyke, who sought to obtain his release on the theory that the crime he committed was one within the exclusive jurisdiction of the United States. In the *Van Dyke Case* the situation was the same as one presented here, *i.e.,* that no objection was made to the jurisdiction of the court at the time of trial, and again this court referred to the same section of the Federal statute that was deemed controlling in the *Burke Case,* and held that the State court had jurisdiction. Exclusive jurisdiction of the Federal government was again asserted in *People* v. *Wilkin & Walsh,* 276 Mich. 679, and again this court pointed out that acts may constitute an offense against the

---

* See 18 USCA, § 315.—REPORTER.
** See 18 USCA, § 547.—REPORTER.
† Certiorari denied 299 U. S. 608 (57 Sup. Ct. 236, 81 L. Ed. 448), 299 U. S. 624 (57 Sup. Ct. 319, 81 L. Ed. 459).—REPORTER.

laws of an individual State as well as against the laws of the United States, and the jurisdiction of the State court was upheld.

Kelly insists, however, that the act ceding jurisdiction to the United States is controlling, but petitioner does not show in the record before us that the building which he entered in the nighttime, for the purpose of committing larceny therein, is located on lands acquired by the government "for forts, magazines, arsenals, dockyards and other needful buildings." Nor can such a claim be maintained. The land in question was not acquired by the military department of the United States but by an agency, *i.e.*, the Federal Public Housing Authority, operating under the supervision and within the jurisdiction of another arm of the executive branch of the government.

The authorities hereinbefore cited are controlling, and we merely refer to the following involving comparable situations: *United States* v. *City of Chester* (C. C. A.), 144 Fed. (2d) 415, in which provisions of the Lanham act are construed; *Johnson* v. *Morrill*, 20 Cal. (2d) 446, 451 (126 Pac. [2d] 873), involving the same act; *State, ex rel. Parker,* v. *Corcoran,* 155 Kan. 714 (128 Pac. [2d] 999, 142 A. L. R. 423), involving voting rights; *C. J. Hendry Co.* v. *Moore,* 318 U. S. 133 (63 Sup. Ct. 499, 87 L. Ed. 663), involving fishing in navigable waters. See contra: *State, ex rel. Moore,* v. *Board of Education of Euclid City School District,* — Ohio App. — (57 N. E. [2d] 118), decided by the Court of Appeals of Ohio, Cuyahoga county, March 20, 1944. See, also, Opinion of Attorney General, August 9, 1932 (Biennial Report 1933–1934, p. 40).

The State of Michigan did not relinquish its authority to punish for crimes committed on the land in question; nor did the Federal government ac-

quire exclusive jurisdiction therein with respect to civil and criminal matters.

The dismissal by the trial judge of Kelly's petition for writ of habeas corpus is affirmed.

STARR, C. J., and NORTH, WIEST, BUTZEL, SHARPE, BOYLES, and REID, JJ., concurred.