638

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
    MICHAEL CALANDRA, JON LEVINE and MARVIN ROSEMAN,
    Appellants.

First Department, January 15, 1991

*Robert G. Morvillo* of counsel *(Catherine M. Foti* and *Michael E. Quiat* with him on the brief; *Morvillo, Abramowitz & Grand, P. C.,* attorneys), for Michael Calandra, appellant.

*Alan R. Kaufman* of counsel *(Buchwald & Kaufman,* attorneys), for Jon Levine, appellant.

*Michael S. Feldberg* of counsel *(Helene M. Freeman, Sheila Ginsberg Riesel* and *Michael McNamara* with him on the brief; *Shea & Gould,* and *Phillips, Nizer, Benjamin, Krim & Ballon* attorneys), for Marvin Roseman, appellant.

*Mark Dwyer* of counsel *(Robert M. Morgenthau, District Attorney,* attorney), for respondent.

## OPINION OF THE COURT

RUBIN, J.

Defendants appeal from a judgment convicting them of misapplication of bank funds pursuant to Banking Law § 673 and from an order denying their postjudgment motion pursuant to CPL 440.10. The issue presented is whether defendants were properly prosecuted, pursuant to State law, for misapplication of the funds of a bank chartered under the laws of the United States.

Defendants Michael Calandra and Jon Levine were employed by Chase Manhattan Bank, N. A. in the Commercial Loan Department which has its offices in Kings County in the City of New York, Borough of Brooklyn. Calandra was the district executive of Commercial Department District 3, which encompasses Brooklyn, Queens, Staten Island and Long Island, and Levine was 1 of 4 "team leaders" who worked closely with Calandra. The market served by the department consists of midsized companies, and the loans extended by Chase in this market are largely unsecured. The prosecution charged that Calandra and Levine made loans, allegedly in the normal course of business, to one Irvin Freedman in return for kickbacks paid by Freedman to their friend, defendant Marvin Roseman, a prosperous businessman who had a long-standing relationship with Chase. Roseman had been a close friend of Calandra's for a number of years and provided him with what the prosecution terms "life-style benefits"—use of a car and apartment and reimbursement of expenditures for food and drink. Since at least 1975, Roseman had paid for various expenses charged to Calandra's credit card in amounts ranging up to over $9,000 a year. In addition, Roseman paid for airline tickets totaling over $5,000 for the three years ending in 1979. In that year, Calandra also had access to Roseman's East 36th Street apartment and use of his Jaguar automobile. It is not asserted that Levine, also a good friend of Calandra's, received any specific benefit from Roseman, only that he was involved as an accessory in a scheme to divert bank funds to an accomplice (Roseman).

The loans alleged to constitute misapplication of bank funds were made to Freedman and entities which he controlled in connection with various Florida real estate ventures. In the course of extending those loans to Freedman, it is asserted that Calandra and Levine violated lending policies specified in the Chase Credit Policy Guide including exceeding the amount of their lending authority, failing to maintain proper records, failing to consult with the bank's real estate department and writing loans outside their district.

Defendants challenge their convictions on a variety of grounds, including lack of a personal pecuniary interest in the misapplied funds (*People v Kagan,* 56 NY2d 193), improper venue (CPL 20.40 [1] [a]), excessive sentences (Penal Law § 60.01 [2] [d]), impropriety by a juror, and insufficiency of the evidence as to defendants Levine and Roseman. It is clear, however, that if defendants are correct in their contention

that the State is without jurisdiction to prosecute them for an offense committed against a national bank, their other arguments are rendered immaterial.

It is significant that the People cite no case in which an officer of a national bank has ever been prosecuted under section 673 of the Banking Law. Indeed, defendants assert that they have found no case in which the officers of a national bank have been prosecuted for misapplication of funds under a State banking statute. The officers of a State bank have been prosecuted under a State banking act where the bank was subject to Federal regulation as a member of the Federal reserve system *(People v Wilkin,* 276 Mich 679, 268 NW 779 [1936]), but no case has been brought to this court's attention involving the prosecution of officers of a *national* bank under State law. While the lack of precedent suggests preemption, further analysis of the doctrine is required to determine its application to the facts at bar.

Enforcement of Federal criminal law is exclusively the province of the Federal courts: "The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States" (18 USC § 3231). However, a particular act may constitute a crime under both Federal and State law. Thus, in the instant matter, misapplication of bank funds violates both 18 USC § 656 and Banking Law § 673. A determination of whether the State may prosecute the officers of a national bank for this crime involves a two-tiered analysis. From the broader perspective, the question is whether Congress has indicated the intent to preclude State regulation of the activities of national banks. From a narrower perspective, the focus is upon any conflict which exists between State law and statutes enacted by Congress.

The seminal case on Federal preemption of the regulation of national banks is *Easton v Iowa* (188 US 220) in which a bank officer was prosecuted under a State statute forbidding the receipt of funds by a bank known by the defendant to be insolvent. The Supreme Court noted that "Federal legislation creating and regulating national banks * * * has in view the erection of a system extending throughout the country, and independent, so far as powers conferred are concerned, of state legislation which, if permitted to be applicable, might impose limitations and restrictions as various and as numerous as the States" *(Easton v Iowa, supra,* at 229; *see also, Farmers' Natl. Bank v Dearing,* 91 US 29). In defining the

scope of Federal preemption the court ruled, "Undoubtedly a State has the legitimate power to define and punish crimes by general laws applicable to all persons within its jurisdiction. So, likewise, it may declare, by special laws, certain acts to be criminal offences when committed by officers or agents of its own banks and institutions. But it is without lawful power to make such special laws applicable to banks organized and operating under the laws of the United States" *(Easton v Iowa, supra,* at 239). Therefore, State law which extends generally to all persons within the State's jurisdiction also regulates the activities of national banks. Thus, civil rights legislation prohibiting geographic discrimination in lending (Banking Law § 9-f [3]), laws governing tax escrow accounts (Real Property Tax Law § 952 *et seq.)* and statutes providing for the establishment of trusts (Banking Law § 14 [1] [c]; § 100-c [7]) all extend to national banks. None of these laws, however, intrudes upon the regulation of national banks by Congress under the National Bank Act (12 USC § 21 *et seq.).*

It seems clear that the Legislature had this principle in mind when it designated the institutions subject to regulation by the Banking Law (§§ 1, 2 [1]). Specifically, the definition of "bank" in section 2 of the statute contains no mention of a national bank, leading this court to conclude that Federally chartered banks are "not subject to the strictures of the New York Banking Law" *(Howard L. Jacobs, P. C. v Citibank,* 92 AD2d 786, 787, *affd* 61 NY2d 869). The somewhat inartful wording of section 673 of the statute which makes it applicable to employees or agents of "any corporation to which the banking law is applicable", seized upon by the People, does not circumvent the exclusion of national banks from its operation, both by the express language of the statute and by judicial interpretation.

Preemption, as applied to national banks, was a prominent issue in the case of *State of North Dakota v Merchants Natl. Bank & Trust Co.* (634 F2d 368 [8th Cir 1980]). In that case, the court elaborated upon the rule set forth in *Easton (supra),* stating that "the quantum of evidence necessary to find a congressional intent to exclude state law from a given field should vary, depending on the relative generality of application of the state law to be excluded" *(State of North Dakota v Merchants Natl. Bank & Trust Co., supra,* at 375). The court held that North Dakota's unfair competition statute, a State law of general application, was not preempted by Federal regulation of national banks, except insofar as it conflicted

with a Federal law providing for approval of name changes by the Comptroller of the Currency. The court relied on *First Natl. Bank v Missouri* (263 US 640, 656) which held that "national banks are subject to the laws of a State in respect of their affairs unless such laws interfere with the purposes of their creation, tend to impair or destroy their efficiency as federal agencies or conflict with the paramount law of the United States." Therefore, irrespective of any intent by Congress to exclude State regulation, "a state statute is void to the extent that it actually conflicts with a valid federal statute" *(Ray v Atlantic Richfield Co.,* 435 US 151, 158; *United States v State of New York,* 552 F Supp 255, 265, *affd, mot to vacate injunction denied* 708 F2d 92, *cert denied* 466 US 936; *Lauer v Bayside Natl. Bank,* 244 App Div 601, 603). Thus, even if, as the People maintain, the comprehensiveness of Federal regulation under the National Bank Act reflects the "nature and complexity of the subject" rather than congressional intent to preclude State regulation in the area *(De Canas v Bica,* 424 US 351, 359), a State law governing a particular activity must still yield in the face of a Federal law in direct conflict.

Upon this appeal, this court is presented with an obvious conflict between New York State law and the applicable Federal statute. Under Federal law, conviction for misapplication of bank funds requires a finding that a defendant acted with intent to injure or defraud a bank *(e.g., United States v Farrell,* 609 F2d 816 [5th Cir 1980]), which intent may be reflected by violation of State law or bank policy *(United States v Mohr,* 728 F2d 1132 [8th Cir 1984], *cert denied* 469 US 843). Banking Law § 673 does not require intent to injure or defraud the bank and, therefore, conduct which is lawful under the Federal statute may be illegal under State law *(see, Easton v Iowa, supra).* The conflict renders the State law a nullity *(Ray v Atlantic Richfield Co., supra,* at 158).

It should be noted that, even if the State had the power to regulate national banks and even if there were no Federal statute in conflict with Banking Law § 673, the reversal of defendants' conviction would nevertheless be required because of various irregularities in their prosecution. The original indictment handed down against defendants contained 94 counts, including larceny in addition to Banking Law infractions, and was premised upon their alleged receipt of kickbacks from Freedman. Their trial under this indictment ended in acquittal on some of the charges with the jury unable to

reach a verdict on the others. Prior to the second trial culminating in the judgment appealed from, the District Attorney, without re-presenting the case to a Grand Jury or even seeking amendment (CPL 200.70), filed a redacted version of the indictment containing just 7 of the original 94 counts, reproduced verbatim. The 7 counts all charged violations of Banking Law § 673.

■ Overlooking the laxity of the procedure employed in filing the second indictment, it constitutes an impermissible change in the theory of prosecution as reflected in the evidence before the Grand Jury which filed it (CPL 200.70 [2]; *People v Taylor,* 43 AD2d 519). At the second trial, the prosecution abandoned its theory that defendants had received kickbacks from Freedman, suggesting instead that Calandra and Levine had caused loans to be extended to Freedman in exchange for the transfer of an interest in the underlying real estate ventures from Freedman to Roseman. Thus, the proof presented at trial contradicted the factual allegations of the indictment as filed by the Grand Jury in violation of constitutional and statutory requirements of fair notice to the defendant to permit the preparation of a defense (NY Const, art I, § 6; CPL 210.05, 200.50; *People v Grega,* 72 NY2d 489, 497; *People v Rodriguez,* 164 AD2d 832).

■ Finally, even under the theory of prosecution presented at trial, the court issued improper instructions to the jury regarding the requirement that the bank officers have a direct pecuniary interest in the misapplied bank funds in order to render their conduct "wilful" in contravention of Banking Law § 673. The money alleged to have been misapplied by the bank officers must have been used "not for the benefit of the company, but for the use and benefit of other enterprises in which they are interested" *(People v Marcus,* 261 NY 268, 278). Conviction "requires some form of self-dealing, some benefit to the accused's commercial and material interests" *(People v Kagan,* 56 NY2d 193, 204, *supra).* Incidental benefits fall short of the requirement that the bank officer have a "personal pecuniary interest in the transactions" *(supra,* at 204).

It is clear from their requests for supplemental instruction that the jury experienced considerable difficulty in determining if the requisite personal pecuniary interest had been established. While the prosecution had asserted that defendant Roseman bestowed certain "quality-of-life benefits" on defendant Calandra, many of these benefits preceded the loans

alleged to constitute misapplication of bank funds, and there is no evidence which establishes that they were a quid pro quo for the loans to Freedman and not merely a reflection of an established pattern of giving arising from the long-standing friendship between the two men. Significantly, the jury returned guilty verdicts only on those counts which related to loans made after the bank officers, Calandra and Levine, learned that Freedman had transferred an interest in one of his ventures to Roseman. Against this background, the court's supplemental instruction on the element of pecuniary interest was highly prejudicial. It stated: "The percentage interest in real property presents a somewhat different issue. There was no proof of direct pecuniary interest going to the bank officer for this item and there need not be. Indeed, if the people prove to your satisfaction, beyond a reasonable doubt, that the percentage interest was given to a third person, i.e., Mr. Roseman, pursuant to the direction, desire, or consent of the bank officers, this, too, constitutes a benefit and satisfies this element of the statutes." This instruction, to which defense counsel promptly objected, far exceeds the construction of personal pecuniary interest delineated in *People v Marcus (supra)* and *People v Kagan (supra)* and is clearly erroneous. A further supplemental instruction on this element of the crime was given by the court, but it was so confusing that it can only have served to further mislead the jury.

Given the seriousness of these deficiencies in the prosecution of this matter, it is unnecessary to reach defendants' other allegations of error.

Accordingly, the judgments of the Supreme Court, New York County (Harold Baer, Jr., J.), rendered October 26, 1984, after jury trial, convicting defendants Calandra and Roseman of three counts of misapplication of bank funds (Banking Law § 673) and defendant Levine of two counts of misapplication of bank funds, should be reversed, on the law, and the indictment dismissed. In view of the foregoing, defendants' appeal from the denial of their application pursuant to CPL 440.10 is dismissed as moot.

MILONAS, J. P., ROSENBERGER, ASCH and KASSAL, JJ., concur.

Judgments, Supreme Court, New York County, rendered on October 26, 1984, unanimously reversed, on the law, and the indictment dismissed. The matter is remitted to the trial court for the purpose of entering an order in favor of the accused

pursuant to CPL 160.50, not less than 30 days after service of a copy of this court's order upon the respondent, with leave during this 30-day period to respondent to move and seek any further stay of the implementation of CPL 160.50 as in the interest of justice is required. Defendants' appeal from the denial of their application pursuant to CPL 440.10 is dismissed as moot.