THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v HERBERT S. CANNON, Appellant. THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v IRVIN FREEDMAN, Appellant. [599

NYS2d 809] —Judgment, Supreme Court, New York County (Thomas B. Galligan, J.), rendered November 23, 1987, convicting defendant Cannon, after jury trial, of two counts of grand larceny in the second degree and one count of misapplication of bank funds, and sentencing him to concurrent prison terms of 1 to 3 years on the larceny counts and 1 year on the misapplication of bank funds count, and judgment, same court and Justice, rendered the same date, convicting defendant Freedman, after jury trial, of two counts of grand larceny in the second degree and two counts of misapplication of bank funds, and sentencing him to concurrent terms of 1⅓ to 4 years on the larceny counts and 1 to 3 years on the misapplication of bank funds counts, unanimously modified, on the law, to reverse the convictions for misapplication of bank funds and dismiss those counts of the indictment, and otherwise affirmed.

Judgment, same court and Justice, rendered the same date, convicting defendant Cannon, upon his plea of guilty, of two misdemeanor counts for failing to file tax returns, and sentencing him to concurrent terms of 6 months, to run concurrently with the sentence under aforesaid judgment, unanimously affirmed.

As the People concede on constraint of *People v Calandra* (164 AD2d 638, *lv denied* 77 NY2d 992, *later proceeding* 190 AD2d 643), defendants' convictions of misapplication of bank funds belonging to a Federally chartered bank must be reversed, and those counts of the indictment dismissed, the field being preempted by Federal law. However, there is no merit to defendants' argument that the same rationale should apply to preempt a State larceny prosecution involving the money of a national bank. Larceny is proscribed by a general law extending to all persons and, unlike the Banking Law found to be preempted in *Calandra,* does not purport to apply specifically to either banks or their officers. As the Supreme Court observed in *Easton v Iowa* (188 US 220, 239), described in *Calandra (supra,* at 641) as the "seminal case" on Federal preemption of the banking field, "Undoubtedly a State has the legitimate power to define and punish crimes by general laws applicable to all persons within its jurisdiction."

Defendant Cannon sets up a straw man in arguing that the omission of any verbatim reference to the Flat Fork property in the contract documents could not have induced Chase to approve the loan, and thus cannot support a larceny conviction. As the theory of the People's case was always that

defendants were acting in concert, it is evident that the more important misrepresentations, and those on which Chase clearly relied, concerned those made by defendants Durkin and Duran, the officers of American Coal, concerning the financial viability of that entity, in which they falsely asserted that American Coal had assets of $14 million and a net worth of $9.6 million. The history and relationship of the parties clearly shows that defendants Cannon and Freedman were not strangers to each other, but that they and the others had long planned and advanced a common purpose with regard to the scheme that was eventually perpetrated.

Nor is there merit to defendant Cannon's argument that he was prejudiced by the People's refusal to reveal the theory of their case until they closed their direct presentation. The People are not required to specify any particular theory of larceny in the indictment *(People v Farruggia,* 41 AD2d 894). "There is no need to designate in the accusatory instrument the particular manner in which the property was stolen or the particular theory of larceny involved" (Donnino, Practice Commentary, McKinney's Cons Laws of NY, Book 39, Penal Law art 155, at 104). The present indictment and discovery provided sufficient information to prepare and present a defense. The indictment clearly alleged that the larceny involved the loans specified, and the prosecutor made an opening statement at trial indicating that defendants acted in concert in making various false representations. *People v Iannone* (45 NY2d 589, 599) does not hold otherwise as there was no claim in that case that defendants were unaware of the crimes with which they had been charged, nor any suggestion of prejudice. The sole issue raised was the sufficiency of the indictment *(supra)*. Here, defendant's argument, confined as it is to unsupported claims that his cross-examination might have been different depending on the particular form of larceny involved, does not give any specific examples of how his ability to cross-examine witnesses was impaired or otherwise show any factual basis for the claim that he was unable to defend against the charges.

As to each count, the jury was charged on the elements of larceny in general, and then told to weigh the count first according to the elements of larceny by false pretenses, and then by embezzlement. Defendant Cannon argues that the counts were thus duplicitous, raising the dangers of lack of fair notice and a nonunanimous verdict *(see, People v Davis,* 72 NY2d 32, 38). However, as the jury returned a verdict "under the false pretenses theory," it is evident that there

was no danger of conviction on less than a unanimous verdict as a result of a "commingling" of the two theories. Nor was there more than one offense charged for double jeopardy purposes, since the same count, and same conduct, were involved, whether the proof supported guilt under a theory of either false pretenses or embezzlement, and thus there was no danger that an acquittal would have permitted retrial for the same conduct under a different theory of larceny.

We have considered the remaining arguments and find them to be without merit. Concur—Rosenberger, J. P., Kupferman, Ross and Kassal, JJ.